UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - -x

SAM SLOAN,                              :

                Plaintiff,      :

        - against -                    :

HOAINHAN "PAUL" TRUONG, ZSUZSANNA  :
"SUSAN" POLGAR, JOEL CHANNING,
WILLIAM GOICHBERG, THE UNITED      :
STATES CHESS FEDERATION, BILL HALL,
HERBERT RODNEY VAUGHN, GREGORY
ALEXANDER, FRANK NIRO, GRANT PERKS :
WILLIAM BROCK, RANDALL HOUGH, RANDY
BAUER, JIM BERRY, TEXAS TECH       :
UNIVERSITY, and THE UNITED STATES
OF AMERICA,                        :

           Defendants.       :

- - - - - - - - - - - - - - - - - -x

**USDC SDNY**
**DOCUMENT**
**ELECTRONICALLY FILED**
**DOC #:**
**DATE FILED:** 8/28/08

**MEMORANDUM DECISION**

07 Civ. 8537 (DC)

**APPEARANCES:**    (see last page)

**CHIN, District Judge**

      In this case, pro se plaintiff Sam Sloan accuses
certain members of the United States Chess Federation (the
"USCF") of posting thousands of obscene messages under his name
on an internet discussion forum (the "Issues Forum"), and
propagating a sordid array of rumors that purportedly caused him
to lose his bid for re-election to the USCF Executive Board (the
"Board").  Sloan seeks $20 million in damages, reinstatement to
the Board, and other injunctive relief, including a court order
directing the Department of Justice ("DOJ") to oversee a new
round of Board elections.

      Defendants move to dismiss the case pursuant to Fed. R.
Civ. P. 12(b)(1), 12(b)(2), and 12(b)(6).  For the reasons that

follow, the motion is granted and the complaint is dismissed for lack of subject matter jurisdiction.

**BACKGROUND**

## A.   Facts

The facts are drawn principally from the complaint, the allegations of which are assumed to be true for the purposes of these motions.  As there is a challenge to the existence of subject matter jurisdiction, the Court also considers facts relevant to the jurisdictional question, set forth in affidavits submitted by the parties.

### 1.   The Parties

Sloan is an investigative "chess journalist" and a member of the USCF.  (Compl. ¶¶ 7, 10).  He sat on the USCF Board from 2006-2007, before losing his bid for re-election the following year.  (Id. ¶ 10).

Defendants consist primarily of certain USCF members, including past and present officers of the Board.  (Id. ¶¶ 11-42).  Among them are Susan Polgar and Paul Truong, Sloan's opponents in the 2007 Board election, who purportedly "engaged in a wide-ranging disinformation campaign to discredit their rivals."  (Id. ¶¶ 3-4).  Polgar sits on the faculty at Texas Tech and was elected over Sloan to a four-year term on the Board in 2007.  (Id. ¶¶ 8, 16).  Truong, Polgar's husband, also is on the faculty at Texas Tech, and won election to the Board in 2007.  (Id. ¶¶ 17-18).

The complaint also names as defendants Texas Tech, the USCF, the United States, and numerous USCF members, described collectively as "an entourage" of "supporters [of Polgar and Truong] and sycophants who have become known as 'Polgarites' or the 'Polgaristas.'" (Id. ¶ 19). The majority of the individually named defendants serve, or have previously served, on the Board.

## 2.    The "Fake Sam Sloan" Postings

The Issues Forum functions as an online discussion board, providing USCF members with the means by which to debate and post opinions on matters affecting the chess community. (Id. ¶ 13). Beginning June 2005, a series of combative postings attributed to Sloan appeared on the Issues Forum.[1] (Id. ¶ 44). The postings, which debuted as Sloan was running for election to the Board, sharply, and often profanely, attacked various candidates and Board members, including then-USCF President Beatriz Marinello. (Id. ¶¶ 44-49). Even after Sloan lost the 2005 election, the postings continued, varying in length and style, but repeatedly disparaging Marinello and castigating select USCF members. (Id. ¶ 50).

In 2006, Sloan successfully ran for election to the Board and, upon securing a seat, wrote an open letter to the

---

[1]     The postings appeared to originate from a variety of email addresses bearing Sloan's name or otherwise attributed to Sloan, including samsloan@usa.com, samsloan@ishiipress.com, sloan@journalist.com, sloan@whocares.com, and whocares@registerednurses.com. (Id. ¶ 50).

Board, accusing Truong of authoring "Fake Sam Sloan" postings to discredit Sloan and other chess rivals.  (Id. ¶ 50).  Asserting that "Truong had the knowledge, the resources, the motivation and the capability to perpetuate this hoax," Sloan lobbied Board members William Goichberg and Joel Channing to launch an investigation into the "real" identity of the "Fake Sam Sloan," and in particular, to determine whether the IP addresses corresponding to the offending messages could be traced back to Polgar and Truong.  (Id. ¶ 52).  Rather than comply, Goichberg and Channing reprimanded and "publicly censured" Sloan for his insistence on investigating fellow Board members.  (Id.).

### 3.  Accusations of Sexual Impropriety with Minors

In addition to the "Fake Sam Sloan" postings, from 2005 to 2007, various USCF members posted "accusations that Plaintiff [wa]s a child molester, a pornographer and a purveyor of 'kiddie porn.'"  (Id. ¶ 62).  Among the repeat posters, the complaint asserts, the "main purveyor" was William Brock, who "continued to post to other public forums . . . including even on the Wikipedia Encyclopedia where he listed Sloan under the category of 'child molesters.'"  (Id. ¶ 63).  The postings often alluded, in explicit terms, to Sloan's alleged sexual activity with minors.[2]

---

[2]     As examples, the complaint cites postings with the subject headings: "Sam Sloan soliciting 8 year old girls," "Actions against a child rapist Sam Sloan," "Actions against Sam Sloan for molesting children," "Sam Sloan went down on a 12 year old Japanese girl."  (Id. ¶ 5).  The complaint also states that various Board members publicized "the well-known fact that in 1992 Sloan was convicted in a child custody case in Virginia involving his daughter" to further disparage him.  (Id. ¶ 24; see

- 4 -

Adding to the allegations of sexual impropriety, shortly after
the 2006 election, Polgar declared that Sloan had "asked to sleep
with her" in 1986, while she was still a minor.  (Id. ¶ 55).  The
Polgar accusation spurred further debates between Sloan and the
Board, and despite Sloan's denial of wrongdoing, culminated in
yet another censure.  (Id. ¶¶ 56-60).

## B.   **Prior Proceedings**

         After losing the 2007 Board election, Sloan commenced
this action on October 2, 2007, "to redress identity theft,
impersonation, election fraud, accounting fraud, insider self-
dealing and other insider wrong doing in connection with the
United States Chess Federation.  (Id. ¶ 1).[3]  In particular, the
complaint charged Troung and Polgar with violating "47 USC §
223(h)(1) by sending over the Internet thousands of obscene
messages likely to be read by children while . . . impersonating
Plaintiff and other well known chess personalities."  (Id. ¶ 3).

         All defendants moved to dismiss the action pursuant to
Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction.

---

Pl. Aff. in Opp. to MTD on Fed. Question Issue ¶¶ 28-29).

         [3]    Sloan is no stranger to litigation, as he has been
engaged in litigation at all levels of state and federal court.
See, e.g., S.E.C. v. Sloan, 436 U.S. 103 (1978); Sloan v. Murphy,
15 F.3d 1089 (9th Cir. 1994); Sloan v. Nixon, 60 F.R.D. 228
(S.D.N.Y. 1973) (suing to enjoin President Nixon from continuing
in office); Matter of Sloan v. Graham, 10 A.D.3d 433 (2d Dep't
2004) (petitioning to designate himself as a candidate for the
2004 Republican Party primary election).  Sloan has also
unsuccessfully appealed orders of protection issued against him
on behalf of his family for "disorderly conduct and two separate
offenses of harassment in the second degree."  See Matter of
Rankoth v. Sloan, 44 A.D.3d 863 (2d Dep't 2007).

The individually named defendants additionally moved to dismiss
for lack of personal jurisdiction under Rule 12(b)(2), and Texas
Tech moved to dismiss under Rule 12(b)(6) for failure to state a
claim.

## DISCUSSION

The complaint alleges that "[j]urisdiction is based on
diversity of citizenship, federal questions, election fraud and
the constitution and laws of the United States."  (Id. ¶ 2).
Accordingly, I consider whether Sloan has shown that this Court
has subject matter jurisdiction over this action.  Construing
plaintiff's pro se complaint liberally, I consider three possible
grounds for subject matter jurisdiction: (1) the United States is
named as a defendant; (2) diversity jurisdiction; and (3) federal
question jurisdiction.  I consider each ground in turn, after I
first discuss the standards generally applicable to Rule 12(b)(1)
motions.  Because I conclude that the Court lacks subject matter
jurisdiction over this action, I do not reach the other prongs of
defendants' motions.

## A.    12(b)(1) Motions to Dismiss

In considering a motion to dismiss for lack of subject
matter jurisdiction pursuant to Rule 12(b)(1), federal courts
"need not accept as true contested jurisdictional allegations."
Jarvis v. Cardillo, No. 98 Civ. 5793 (RWS), 1999 WL 187205, at *2
(S.D.N.Y. Apr. 6, 1999).  Rather, a court may resolve disputed
jurisdictional facts by referring to evidence outside the
pleadings, such as affidavits.  See Zappia Middle E. Constr. Co.

v. Emirate of Abu Dhabi, 215 F.3d 247, 253 (2d Cir. 2000);
Filetech S.A. v. France Telecom S.A., 157 F.3d 922, 932 (2d Cir.
1998). As the party "seeking to invoke the subject matter
jurisdiction of the district court," Scelsa v. City Univ. of New
York, 76 F.3d 37, 40 (2d Cir. 1996), the plaintiff must
demonstrate by a preponderance of the evidence that there is
subject matter jurisdiction. Aurecchione v. Schoolman Transp.
Sys., Inc., 426 F.3d 635, 638 (2d Cir. 2005). Though "no
presumptive truthfulness attaches to the complaint's
jurisdictional allegations," Guadagno v. Wallack Ader Levithan
Assocs., 932 F. Supp. 94, 95 (S.D.N.Y. 1996), a court should
"'constru[e] all ambiguities and draw[] all inferences' in a
plaintiff's favor." Aurecchione, 426 F.3d at 638 (quoting
Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000)).

## B.   United States as Defendant

Although Sloan does not specifically assert the
involvement of the United States as a basis for subject matter
jurisdiction, district courts have original jurisdiction over
certain civil actions where the United States is named as a
defendant. See, e.g., 28 U.S.C. § 1346(a) (certain contract
actions), (b) (certain tort actions). Here, as Sloan has named
the United States as a defendant, I consider whether the Court
has subject matter jurisdiction by virtue of that fact.

It is well-settled that the United States is protected
from suit by the doctrine of sovereign immunity. See United
States v. Mitchell, 445 U.S. 535, 538 (1980). Hence, the United

States can be sued only when it consents to be sued and "the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit."  Id. at 538.

Here, plaintiff has not articulated a legal theory for suing the United States, nor has he identified any statute that would permit him to sue. He seeks, without citation of any legal authority, to compel DOJ to "supervise a new election" for the Board. While the claim could be construed as a claim for mandamus under 28 U.S.C. § 1361, the complaint does not assert sufficient facts to render a mandamus claim against the United States plausible. First, such claims may be brought only against an officer, employee, or agency of the United States, 28 U.S.C. § 1361, and here Sloan has sued only the United States itself rather than any federal officer or agency. Second, even assuming Sloan named a federal officer or agency, he has not alleged -- nor could he -- that he has a "clear right" to have DOJ supervise a board election of an association such as the USCF, or that DOJ has a "plainly defined and peremptory duty" to perform that act. See Anderson v. Bowen, 881 F.2d 1, 5 (2d Cir. 1989). Hence, he does not meet the requirements for mandamus relief. Even when a party specifically cites § 1361 (and Sloan does not), the district court lacks jurisdiction when the requirements for mandamus are not met. See Sprecher v. Graber, 716 F.2d 968, 973 (2d Cir. 1983); City of Milwaukee v. Saxbe, 546 F.2d 693, 700 (7th Cir. 1976).

- 8 -

Accordingly, the Court lacks subject matter jurisdiction over the claims against the United States, and these claims are therefore dismissed.  The assertion of claims against the United States thus is not a basis for subject matter jurisdiction in this case.

## C.   **Diversity Jurisdiction**

Under 28 U.S.C. § 1332(a), the federal district courts have original jurisdiction over all civil actions where there is diversity of citizenship between the parties and "the matter in controversy exceeds the sum or value of $75,000."  28 U.S.C. § 1332(a)(1).  With respect to the "diversity" requirement, "[a] case falls within the federal district court's 'original' diversity 'jurisdiction' only if diversity among the parties is complete, i.e., only if there is no plaintiff and no defendant who are citizens of the same State."  Wis. Dep't of Corr. v. Schact, 524 U.S. 381, 388 (1998).

Here, diversity jurisdiction does not exist for Sloan has failed to allege, much less prove, complete diversity.  On its face, the complaint asserts that Sloan "resides" in New York and that defendant Goichberg "resides in Arcadia, California near the Santa Anita Race Track when the horses are running and in New York when the Mets are playing and spends the rest of his time moving about the country."  (Compl. ¶ 22).  Because the complaint fails to identify either state as Goichberg's "domicile," it fails to properly allege subject matter jurisdiction.  Moreover, Goichberg has submitted ample evidence to show that he is a

- 9 -

"citizen" of New York for the purposes of diversity jurisdiction,
including: the deed to his house in Orange County, New York;
property tax records for his New York residence; and affidavits
attesting that he votes, pays taxes, and resides exclusively in
New York.  (See Goichberg Aff. & Suppl. Aff.).  In contrast,
Sloan offers only speculation as he fails to offer any evidence
to controvert Goichberg's specific and concrete evidence.[4]   As
the complaint fails to identify Goichberg as a "citizen" of any
State, and I find on the incontrovertible evidence that Goichberg
is a citizen of New York for these purposes, the Court does not
have diversity jurisdiction over the matter.

## D.   Federal Question Jurisdiction

Federal courts also have jurisdiction over actions
"arising under the Constitution, laws, or treaties of the United
States."  28 U.S.C. § 1331.  An action does not arise under
federal law for jurisdictional purposes, however, simply because
it involves a federal statute.  As the Supreme Court recently
reiterated, "a case 'aris[es] under' federal law within the
meaning of § 1331 . . . if 'a well-pleaded complaint establishes
either that federal law creates the cause of action or that the

---

[4]      In his opposition, Sloan asserts, among other things,
that he has been unable to find Goichberg's home on "google
maps," that Goichberg never answers the phone when Sloan calls
him at his New York phone number, that "Goichberg lives a
vagabond life," and that, as of Sloan's opposition, Goichberg had
been in Southern California for four months.  (Pl. Aff. in Opp.
to MTD on Diversity Issue ¶¶ 7-14).  Even here, however, Sloan
neither claims that Goichberg is a "citizen" of another state nor
offers any evidence to that effect.

plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law.'" Empire Healthchoice Assur., Inc. v. McVeigh, 126 U.S. 677, 690 (2006) (citation omitted).

Even liberally construed, Sloan fails to present a federal question sufficient to confer subject matter jurisdiction on this Court. While Sloan grounds jurisdiction on the "constitution and laws of the United States," the complaint makes no reference to violations of Sloan's constitutional rights, nor does it specify which constitutional provisions are implicated. Nor does Sloan cite any statutory authority that supports his claims of "election fraud" and demands for relief. Indeed, the only statute Sloan references with respect to the internet postings -- the Communications Decency Act, 47 U.S.C. § 223 -- is a criminal statute that prohibits the making of "obscene or harassing" telecommunications, but creates no private right of action.[5] See Ghartey v. Chrysler Credit Corp., No. CV-92-1782 (CPS), 1992 WL 373479, at *5 (E.D.N.Y. Nov. 23, 1992).

The complaint recites a laundry list of additional grievances -- including that Goichberg "refused to put the name and ID Number of Bobby Fischer on the USCF website"[6]; the Board's

---

[5]     The complaint cites to § 223(h)(1), but that specific provision merely defines the term "telecommunication device" as it pertains to the rest of the section. 47 U.S.C. § 223(h)(1)

[6]     In its only other statutory reference, the complaint broadly suggests that the USCF refused to recognize Fischer as a member "because Fischer is anti-Semitic" and that in so doing, the organization violated 42 U.S.C. § 1983 (adding that Fischer's status as a "fugitive from justice" was irrelevant to his

- 11 -

decision to move to Tennessee did not meet "the legal requirements" necessary for "a not-for-profit corporation to bring about such a major move"; and the Board's "refus[al] to appoint Sloan as a liaison to any committee . . . denied [him] the influence that a board member is entitled to have" -- without providing sufficient detail as to how any of these grievances amount to federal claims. Instead, the complaint largely interweaves purported "facts" with Sloan's own subjective rantings and commentary about defendants and their alleged shortcomings. For the most part, these are simply personal, vindictive, and nonsensical attacks that do not belong in a pleading filed in a judicial proceeding.

Sloan's bare assertion that the complaint raises "a great abundance of federal questions" (Pl. Aff. in Opp. to MTD on Fed. Question Issue ¶ 2) does not suffice to invoke the Court's jurisdiction, nor does his blanket demand for intervention by DOJ. As to Sloan's assertion that Texas Tech "has allowed Polgar and Truong to use the computers of the University to impersonate Sam Sloan," that claim is also dismissed because the complaint fails to allege that Texas Tech, a state institution, has waived sovereign immunity with respect to such claims. See United States v. Texas Tech Univ., 171 F.3d 279, 289 (5th Cir. 1999)

membership as "the USCF has 600 prison members, some of whom are psychopathic mass murderers"). (Id. ¶ 85). Sloan does not claim to have standing to vindicate Fischer's rights and the Court notes that Fischer died in January 2008, after the complaint had been filed. Moreover, clearly the USCF -- a private not-for-profit organization -- does not act under "color of law."

("The Eleventh Amendment cloaks Texas Tech University . . . with sovereign immunity as [a] state institution[].").

## CONCLUSION

For the foregoing reasons, defendants' motions to dismiss are granted and the complaint is dismissed with prejudice and with costs. The Clerk of the Court shall enter judgment accordingly and close the case.

SO ORDERED.

Dated:   New York, New York
       August 28, 2008

DENNY CHIN
United States District Judge

**APPEARANCES:**

For Plaintiff:

> SAM SLOAN
> Pro Se
> 1664 Davidson Avenue, Apt. 1B
> Bronx, New York   10453

For Defendant Texas Tech University:

> GREG ABBOTT, Esq.
> Attorney General of Texas
>       By:  Scot M. Graydon, Esq.
>            Assistant Attorney General
> P.O. Box 12548, Capitol Station
> Austin, Texas   78711

For Defendant United States of America:

> MICHAEL J. GARCIA, Esq.
> United States Attorney for the
> Southern District of New York
>       By:  Emily E. Daughtry, Esq.
>            Special Assistant United States Attorney
> 86 Chambers Street
> New York, New York   10007

For Defendant William Brock:

> HANDLER & GOODMAN, LLP
>       By:  Arthur M. Handler, Esq.
> 805 Third Avenue, 8th Floor
> New York, New York   10022
>
> LAW OFFICE OF PATRICK M. O'BRIEN
>       By:  Patrick M. O'Brien, Esq.
> 309 Elmore Street
> Park Ridge, Illinois   60068

For Defendants Susan Polgar and Paul Truong:

> NIXON PEABODY, LLP
>       By:  Joseph J. Ortego, Esq.
> 50 Jericho Quandrangle, Suite 300
> Jericho, New York   11753

- 14 -

For Defendants United States Chess Federation, Joel Channing, William Goichberg, Bill Hall, Herbert Rodney Vaughn, Gregory Alexander, Grant Perks, Randall Hough, Randy Bauer, and Jim Berry:

> PROSKAUER ROSE, LLP
>     By:  Jeremy M. Brown, Esq.
> One Newark Center, 18th floor
> Newark, New Jersey  07102